**Gerald GREENE, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–9509–CR–566.

Court of Appeals of Indiana.

Aug. 13, 1996.

Transfer Denied Oct. 16, 1996.

Pequita Jay Buis, Buis & Associates, Indianapolis, for Appellant–Defendant.

Pamela Carter, Attorney General of Indiana, Rafal Ofierski, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

**OPINION**

ROBERTSON, Judge.

Gerald Greene appeals his conviction of battery, a class A misdemeanor, for which he received a sentence of three-hundred and sixty-five days. He claims that the evidence is insufficient to support his conviction and that the trial court did not properly advise him of his right to a jury trial. We affirm.

Greene claims the evidence is insufficient to support his conviction of battery as a class A misdemeanor. He claims that his conviction rests entirely upon circumstantial evidence and that his own testimony sets forth a reasonable explanation of the circumstances.

A person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery, a class B misdemeanor. Ind.Code 35–42–2–1(a). However, the offense is a class A misdemeanor if it results in bodily injury to any other

person. I.C. 35–42–2–1(a)(1). "Bodily injury" means any impairment of physical condition, including physical pain. I.C. 35–41–1–4.

The evidence most favorable to conviction reveals that Greene lived with the victim and her three children. On the night in question, the victim had some guests at her home. Greene appeared and ordered the guests to leave. In response, the victim ordered Greene to leave. Instead, Green followed her around and eventually punched her in the jaw and neck. As she tried to block the blows, Green hit her in the hand. When a police officer arrived, he noticed some extreme red marks around her neck and swelling below her eye. Later, Greene admitted that he had struck the victim.

■ The evidence is sufficient to support the conclusion that Greene knowingly touched the victim in a rude, insolent, or angry manner and that the conduct resulted in bodily injury to the victim. The evidence therefore is sufficient to support Greene's conviction of battery as a class A misdemeanor.

Greene claims the trial court did not properly advise him of his right to a jury trial. He also claims the record does not sufficiently show his waiver of the right.

The record shows that Greene signed a document entitled INITIAL HEARING RIGHTS, which included the following statement:

5. You have the right to a trial by jury. If you wish to have a trial by jury, you must make your request at least ten (10) days prior to your trial setting. If you do not request a jury trial at least ten (10) days prior to your trial setting, you waive you [sic] right to a trial by jury. If you want a jury trial, you must make a timely request even if you do not have an attorney.

Greene signed the form just below the statement: "I have read these rights and believe that I understand them." Greene did not request a jury trial, and the case proceeded with a trial to the bench.

■ By the terms of Ind.Crim.Rule 22, a defendant charged with a misdemeanor who fails to make a timely jury request waives the right to a trial by jury if he has been advised in a timely manner of both the right to jury trial and the consequences of failing to make a timely demand. *Poore v. State*, 666 N.E.2d 415, 418 (1996). The defendant's waiver, however, must be voluntary, knowing, intelligent, and personal. *Id.*

■ Greene first claims the form he signed did not sufficiently advise him of his right to a jury trial so that he could have knowingly waived that right. The document informed Greene of his right to a jury trial and informed him that, if he did not request a jury trial within ten days, then he would waive his right to a trial by jury. A waiver which contains the necessary advice in writing is sufficient to establish that a waiver is knowing. *Poore*, 666 N.E.2d at 418. The record shows that Greene received a full advisement of his right to a trial by jury so that his subsequent waiver was knowingly entered. Further, Greene has identified nothing in the record to indicate that his waiver was not entered voluntarily or intelligently.

Greene claims a valid waiver cannot be presumed from a silent record. The record, however, contains a written advisement complete with Greene's signature. The record is, therefore, not silent on the matter.

In order for a conviction to stand, the record must show that Greene was capable of reading and understanding the advisement contained in the initial hearing rights form. *See Poore*, 666 N.E.2d at 418. The record reveals that Greene appeared for a pretrial hearing at which he conversed with the trial judge, but he did not inform the judge that he could not read or that he did not understand the initial hearing rights form he signed. Because Green did not assert that he could not read or understand the form, he has not established he was not fully informed of his right to a trial by jury and the consequences of a failure to exercise the right. *Id.* at 418 (citing *Hadley v. State*, 636 N.E.2d 173, 175 (Ind.Ct.App.1994)). The record supports the determination that the waiver was voluntary, knowing, and intelligent.

We finally must determine whether Greene's waiver was personal. The personal

nature of the waiver is inferred from the defendant's failure to assert the right coupled with the evidentiary basis for the determination that the waiver is voluntary, knowing, and intelligent. *Poore*, 666 N.E.2d at 418. The record reveals that Greene did not timely request a trial by jury and further supports the determination that Greene voluntarily, knowingly, and intelligently waived the right to a jury trial. Thus, the record also supports the determination that Greene personally waived the right. *Id.*

For the reasons related above, the record establishes that the trial court properly advised Greene of his right to a jury trial and that he subsequently waived the right. He therefore is not entitled to relief on this issue.

Judgment affirmed.

BAKER, J. concurs.

STATON, J., dissents with separate opinion.

STATON, Judge, dissenting.

I dissent for the following reasons:

I. The record gives no indication that Greene knowingly, intelligently, and voluntarily waived his right to a jury trial.

II. In order for a defendant's waiver of rights to stand, the record must show that the defendant was capable of reading and understanding a written advisement of rights.

III. *Poore v. State*, 666 N.E.2d 415 (Ind. Ct.App.1996) and *Hadley v. State*, 636 N.E.2d 173, 175 (Ind.Ct.App. 1994), *trans. denied*, should be overruled by the Indiana Supreme Court as both are founded upon the erroneous conclusion that the defendant must assert or inform the trial court that he cannot read or understand a waiver of rights form.

Both the Sixth Amendment to the United States Constitution and Art. I, § 13 of the Indiana Constitution guarantee an accused the right to a trial by jury. Where an accused is charged with a misdemeanor, Ind. Crim.Rule 22 applies. This rule provides:

A defendant charged with a misdemeanor may demand trial by jury by filing a written demand therefor not later than ten (10) days before his first scheduled trial date. The failure of a defendant to demand a trial by jury as required by this rule shall constitute a waiver by him of trial by jury unless the defendant has not had at least fifteen (15) days advance notice of his scheduled trial date and of the consequences of his failure to demand a trial by jury.

In determining waiver under this rule, this court has stated:

Our decisions have consistently held that it is fundamental error for a court to deny a defendant a jury trial without eliciting a waiver from him personally. A valid waiver cannot be made pursuant to C.R. 22 in the absence of an advisement by the trial court of the consequences of a failure to demand a trial by jury not later than ten days prior to the trial date.

*Hanna–Womack v. State*, 623 N.E.2d 439, 440 (Ind.Ct.App.1993), *reh. denied* (citing *Vukadinovich v. State*, 529 N.E.2d 837, 839 (Ind.Ct.App.1988)). This court cannot infer a knowing and intelligent waiver from a record that does not demonstrate the defendant's personal choice. *Id.*

In order for Greene's waiver to stand, the record must reflect that he was fully advised of his right. *Eldridge v. State*, 627 N.E.2d 844, 847 (Ind.Ct.App.1994), *trans. denied*. *The record must show that he was capable of reading a written advisement and understanding the advisement*, whether it be oral or written. *Id.* at 848, n. 3 (emphasis added).

Here, Greene signed a form entitled "Municipal Court of Marion County Initial Hearing Rights" which indicated that he had a right to a trial by jury and that failure to request a jury trial within ten days prior to the trial date constituted a waiver of that right. Greene signed and dated the form following the statement, "I have read these rights and believe that I understand them." Record at 22. This form is the only evidence of Greene's waiver. On the same day, an initial hearing was held where the trial court signed a no contact order and instructed

Greene to sign it. The trial court then stated, "Contact your attorney in the next ten days, otherwise you could give up certain defenses that you have." Record at 26. Thereafter, Greene appeared for his bench trial and was found guilty.

From these facts, the majority erroneously concludes that Greene effectively waived his right to a trial by jury. However, the record reveals only that Greene signed the form without any evidence or inquiry from the Judge that he was capable of reading and understanding its contents. Without this, there can no effective waiver.[1]

Nevertheless, citing *Poore v. State*, 666 N.E.2d 415, 418 (Ind.Ct.App.1996) and *Hadley v. State*, 636 N.E.2d 173, 175 (Ind.Ct.App. 1994), the Majority indicates that because Greene did not *assert* that he could not read or understand the form, he has not established that he was not fully informed of his rights. *See Poore, supra*, at 418. By relying upon *Poore* and *Hadley*, the Majority now places the onus on the defendant to demonstrate whether or not he can read and understand the waiver form. As a result, the Majority not only relieves the trial court of any duty to inquire as to a defendant's ability to read and understand a form waiving his fundamental constitutional right to a jury trial, but now affirmatively shifts the burden of establishing a record of a knowing and intelligent waiver to the defendant. This is in error.

The trial court, not the defendant, should establish a record that the defendant was capable of reading a written advisement and of understanding the advisement, whether it be oral or written. Because *Poore* and *Hadley* impermissibly allow this burden to be shifted to the defendant, these cases should be overruled by the Indiana Supreme Court. *Hadley*, for example, shows on the face of the opinion that Hadley did not have an opportunity to read or understand the waiver he signed. "Hadley signed and dated the bottom of the form *immediately* beneath the sentence 'I have read these rights and believe that I understand them'". *Hadley, supra*, at 174 (emphasis added). If Hadley signed the form immediately, he could not have read it or understood it. The mere formality of his signature lends nothing to the avoidance of fundamental error. Again, in *Poore*, there is a signing of the waiver of a jury trial form on September 20, 1994, without any indication of an advisement or inquiry. After the ten days to request a jury trial had expired and his right to a jury forfeited, an attempt to doctor the record was made on October 3, 1994, by having Poore sign a second waiver of jury trial form before his bench trial. *Poore, supra*, at 417.

Without any evidence that Greene could read and understand the "Initial Rights Hearing" form, I cannot conclude that he knowingly, intelligently, and voluntarily waived his right to a jury trial.

For these reasons, I would reverse Greene's conviction for battery and remand this case for a new trial.

---

**1.** This court's determination in *Eldridge* supports this conclusion as it presents analogous facts. In *Eldridge*, the defendant signed a form comparable, if not identical, to the one signed by Greene. Thereafter, Eldridge appeared for his initial hearing and the trial court instructed Eldridge of a no contact order requested by the State. *Eldridge, supra*, at 847. The trial court gave Eldridge time to review the order and then asked him if he read and understood the order, to which he responded affirmatively. *Id.* Based upon this interaction, this court determined that the trial court could reasonably conclude that Eldridge was capable of reading and understanding the "Initial Hearing Rights" form. *Id.*

Unlike *Eldridge* where the defendant's understanding could be found based upon his interaction with the trial court, here the record only shows that Greene signed the "Initial Hearing Rights" form and nothing else. In fact during his initial hearing, the trial court did not even ascertain whether Green read and understood the no contact order but only instructed him to sign it, and told him to obtain counsel or he would "give up certain defenses." Record at 26.